Andrew J. Guzzo (HI-SBN 010586)
KELLY GUZZO, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 7400
Honolulu, HI 96813
Telephone: 808-664-4651
Email: aguzzo@kellyguzzo.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA E. MARTIN, | ) Case No.:  1:24-cv-218 |
| | ) |
| Plaintiff, | ) **COMPLAINT AND DEMAND FOR** |
| | ) **JURY TRIAL** |
| v. | ) |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, | ) |
| INC., GOLDMAN SACHS BANK USA, | ) |
| BARCLAY'S BANK OF DELAWARE, and | ) |
| VARO BANK, N.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

Comes Now Plaintiff, Maria E. Martin, by counsel, and for her Complaint

against the Defendants, she alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.      Three years ago, Plaintiff was forced to sue Defendant Experian Information Solutions, Inc., as well as multiple furnishers of credit information, after they refused to remove inaccurate information from her credit report. *See Martin v. Chartway Federal Credit Union*, Case No. 1:21-cv-00287 (D. Haw. 2021).

3.      Plaintiff ultimately settled her claims with each of the defendants and as of April 25, 2022, she regained her excellent credit history.

4.      In August 2023, Plaintiff learned that Experian was once again reporting a litany of inaccurate information in her credit report, including: (1) eight accounts that did not belong to her; (2) four inquiries; and (3) personal information associated with someone by the name of Maria Andrea Benitez. Following this discovery, Plaintiff mailed Experian a dispute letter on or around September 1, 2023, that explained that none of the information belonged to her and either: (1) someone was using her credit without authorization; or (2) Experian's matching criteria was

2

confusing her with another person.[1] Plaintiff's dispute letter further noted that she had previously filed a lawsuit for putting similar information on her credit report.

5.      In response to her credit dispute, Experian deleted 5 of the credit accounts, but claimed to have "verified" that the accounts with Goldman Sachs Bank, USA, Barclay's Bank of Delaware, and Varo Bank belonged to her. Experian also refused to remove the inquiries and certain identifying information, such as addresses in Utah.

6.      Experian reached this conclusion—despite the 5 other creditor's results—because it does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the furnisher's response, despite numerous court decisions admonishing this practice. *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008) (explaining that "[r]eceiving notification of a dispute from a customer shifts the responsibility of reinvestigation onto the credit reporting agency, and the statutory responsibility imposed on the credit report agency 'must consist of something more than merely parroting information received from other sources.'") (citation omitted).

---

[1] As of the date of the filing of this Complaint, Plaintiff remains unsure why Experian continues to add inaccurate information to her credit file. However, it appears that Plaintiff has a mixed credit file because neither Trans Union nor Equifax have added this information to her credit reports. Put differently, if Plaintiff were a victim of identity theft as she once believed, the inaccurate accounts would likely appear on all three of her reports.

7.     Time and time again, Experian has been sued[2] and instructed by federal courts that it must conduct an independent investigation of a consumer's dispute, but it has refused to follow these clear instructions because of costs associated with complying with the FCRA. Instead of conducting an independent investigation, Experian merely forwards the dispute to a furnisher; and it accepts the furnisher's results without consideration of the contradicting information submitted by the consumer. Thus, once Goldman Sachs Bank, USA, Barclay's Bank of Delaware, and Varo Bank claimed that the item belonged to Plaintiff, Experian *automatically* generated its "investigation results"—without consideration of the information submitted by Plaintiff, such as her prior lawsuit.

8.     Accordingly, Plaintiff alleges claims against Experian for failing to reasonably ensure the maximum possible accuracy of her credit reports in violation of § 1681e(b), and for failing to fulfill their reinvestigation duties in violation of § 1681i.

9.     In addition, Plaintiff also alleges claims against Defendants Goldman Sachs Bank, USA, Barclay's Bank of Delaware, and Varo Bank for failing to fully and properly investigate Plaintiff's disputes as required by § 1681s-2(b).

---

[2] By way of example, a review of PACER shows that Experian has been sued more than 1,400 times in 2024 alone. In 2023, it was sued more than 2,400 times, primarily for FCRA violations.

## JURISDICTION

10.     The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p), and 28 U.S.C. §1331.

## PARTIES

11.     Plaintiff, Maria E. Martin ("Plaintiff"), is a natural person residing in the State of Hawaiʻi.

12.     Defendant Experian Information Solutions, Inc. ("Experian") is a limited liability corporation doing business in Hawaiʻi with a principal place of business at 475 Anton Blvd. Costa Mesa, California 92626. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f) and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purposes of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d).

13.     Defendant Goldman Sachs Bank, USA ("Goldman Sachs") is a state chartered bank with a principal place of business in New York. Goldman Sachs is a "furnisher" governed by the FCRA.

14.     Defendant Barclay's Bank of Delaware ("Barclay's Bank") is a subsidiary of the multinational bank, Barclay's, and serves primarily as a credit card issuer, which with a principal place of business in Delaware. Barclay's Bank is a "furnisher" governed by the FCRA.

15.    Defendant Varo Bank ("Varo Bank") is an FDIC-issured, online-only bank, which is headquartered in San Franciso, California. Varo Bank is a "furnisher" governed by the FCRA.

## FACTS

16.    In July 2020, Plaintiff attempted to qualify for a mortgage with Hawai'i Mortgage Experts.

17.    During the application process, Plaintiff learned that there were numerous accounts on her Experian credit reports that did not belong to her, including Chartway and Credit One accounts.

18.    This information was inaccurate. Plaintiff has never had any accounts with Chartway or Credit One, nor has she ever authorized anyone to obtain these accounts using her personal information.

19.    After she sent several disputes to Experian and it refused to remove the information, Plaintiff filed a lawsuit on June 25, 2021. *Martin v. Chartway Federal Credit Union*, Case No. 1:21-cv-00287 (D. Haw. 2021).

20.    On November 16, 2021, Experian was dismissed from the case after Plaintiff settled her claims with Experian.

21.    Despite the prior lawsuit, Experian once again added inaccurate information to Plaintiff's credit report some time prior to August 2023.

22.    At that time, Plaintiff learned that Experian was once again reporting a litany of inaccurate information in her credit report, including: (1) eight accounts that did not belong to her; (2) four inquiries; and (3) personal information associated with someone by the name of Maria Andrea Benitez.

23.    Following this discovery, Plaintiff mailed Experian a dispute letter on or around September 1, 2023, that explained that none of the information belonged to her and either: (1) someone was using her credit without authorization; or (2) Experian's matching criteria was confusing her with another person. Plaintiff's dispute letter further noted that she had previously filed a lawsuit for putting similar information on her credit report.

24.    In response to her credit dispute, Experian deleted 5 of the credit accounts in October 2023, but claimed to have "verified" that the accounts with Goldman Sachs, Barclay's Bank, and Varo Bank belonged to her.

25.    Experian failed to remove this information because it did not conduct an independent investigation into Plaintiff's disputes.

26.    Instead, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank—who themselves did not substantively consider Plaintiff's dispute as reflected by their own investigation results—indicated to Experian that the information was correct and should remain on Plaintiff's credit reports.

27.    Once Defendants Goldman Sachs, Barclay's Bank, and Varo Bank inaccurately verified the information, Experian accepted the results of the furnishers' so-called investigations and automatically sent Plaintiff a letter stating that the inaccurate information would remain on her credit report.

28.    Plaintiff sent multiple follow-up dispute letters to Experian, including on or around December 2023 and January 2024.

29.    In response to her third dispute, the Goldman Sachs account was finally removed from her report, but Experian again claimed to have "verified" that the accounts with Barclay's Bank of Delaware and Varo Bank belonged to her.

30.    As explained above, Experian failed to remove this information because it did not conduct an independent investigation into Plaintiff's disputes.

31.    Instead, Defendants Barclay's Bank and Varo Bank—who themselves did not substantively consider Plaintiff's dispute as reflected by their own investigation results—indicated to Experian that the information was correct and should remain on Plaintiff's credit reports.

32.    As a result of the Defendants' failure to remove the inaccurate information from Plaintiff's credit reports, she suffered actual damages, including complications in obtaining healthcare, a denial for a credit card, lost opportunities including restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

33.    As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the furnisher's response, despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave 9esponsibility[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

34.    Upon information and belief and consistent with its standard policies and procedures, Defendant Experian automatically generated its "investigation" results once Defendants Goldman Sachs, Barclay's Bank, and Varo Bank provided their responses to Plaintiff's dispute, verifying that account belonged to her, and no Experian employee took any additional steps after the furnishers provided their responses to Plaintiff's disputes.

35.     Instead, Defendant Experian blindly accepted Defendants Goldman Sachs, Barclay's Bank, and Varo Bank's version of the facts and continued to report the inaccurate and derogatory information on Plaintiff's credit report.

36.     Defendant Experian continues the practice of parroting the response from their furnishers even though it has been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

37.     For example, a review of PACER shows that Experian has been sued more than 1,400 times in 2024 alone, primarily for FCRA violations.

38.     In 2023, it was sued more than 2,400 times, primarily for FCRA violations.

39.     Defendant Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

40.     Instead, Defendant Experian intentionally chooses not to comply with the FCRA to lower its costs and increase profits.

41.     By example only and without limitation, its conduct was willful because it was intentionally accomplished through intended procedures and because Experian's efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately. Accordingly, Defendant Experian's violations of the FCRA were willful.

42.     In addition, at all times pertinent to this Complaint, Defendants Goldman Sachs's, Barclay's Bank's, and Varo Bank's processing of Plaintiff's credit disputes was willful and carried out in a reckless disregard for consumers rights as set forth under the FCRA. By example only and without limitation, their conduct was willful because it was intentionally accomplished through intended procedures and as their efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

43.     In addition, the willfulness of Defendants Goldman Sachs's, Barclay's Bank's, and Varo Bank's FCRA violations can be established by, for example, the fact that:

    a.  Congress enacted the FCRA in 1970, and they have had over 50 years to become compliant;

    b.  Goldman Sachs, Barclay's Bank, and Varo Bank are large, multinational financial institutions with access to legal advice through their own general counsel and outside litigation counsel. Yet, there is not contemporaneous evidence that any of them determined that their conduct was lawful;

c. They each knew, or had reason to know, that their conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

d. They voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. Their FCRA violations were repeated and systematic;

f. They had substantial documentation available to them that apprised them of their duties under the FCRA but still chose not to comply with the statute; and

g. They had notice of their defective dispute processing procedures through internal audits and litigation, but chose not to meaningfully change their policies and procedures to comply with the FCRA.

### <u>COUNT ONE</u>: **Violation of 15 U.S.C. § 1681e(b) (Defendant Experian)**

44. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

45. Experian violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files it published and maintained, including but

not limited to: (1) by adding the 8 credit accounts and other information to Plaintiff's file even though it had been sued for similar misconduct in the past; and (2) by continuing to publish this information in Plaintiff's credit reports after she disputed the information directly with Experian.

46.     As a result of Experian's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: complications in obtaining healthcare, a denial for a credit card, lost opportunities including restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

47.     Experian's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

48.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT TWO:**
**Violation of 15 U.S.C. § 1681i**
**(Defendant Experian)**

49.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

50.     Experian violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and delete the disputed accounts from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of §1681i(a)(5)(A).

51.     Because of Experian's violations of 15 U.S.C. §1681i, Plaintiff suffered actual damages, including but not limited to: complications in obtaining healthcare, a denial for a credit card, restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

52.     Experian's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

53.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT THREE:**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(A)**
**(Defendants Goldman Sachs, Barclay's Bank, and Varo Bank)**

54.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

55.     On one or more occasion within the past two years, by example only and without limitation, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

56.     When Plaintiff disputed her accounts with the credit bureaus, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Defendants Goldman Sachs, Barclay's Bank, and Varo Bank. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

57.     When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an ACDV form.

58.     Upon information and belief, the ACDV form is the method by which Defendants Goldman Sachs, Barclay's Bank, and Varo Bank have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

59.     Upon information and belief, Plaintiff alleges that the credit bureaus forwarded Plaintiff's disputes via an ACDV to Defendants Goldman Sachs, Barclay's Bank, and Varo Bank.

60.     Defendants Goldman Sachs, Barclay's Bank, and Varo Bank understood the nature of Plaintiff's disputes when they received the ACDV forms.

61.     Upon information and belief, when Defendants Goldman Sachs, Barclay's Bank, and Varo Bank received the ACDV form containing Plaintiff's disputes, they followed a standard and systemically unlawful process where they reviewed only their own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

62.     Upon information and belief, when Defendants Goldman Sachs, Barclay's Bank, and Varo Bank receive a consumer dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether the information already in their computer system is itself accurate.

63.     Because of these violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: a denial for a credit card, restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

64.     The above violations of § 1681s-2(b)(1)(A) were willful, rendering Goldman Sachs, Barclay's Bank, and Varo Bank liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank were negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

65.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendants Goldman Sachs, Barclay's Bank, and Varo Bank in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
### Violation of 15 U.S.C. § 1681s-2(b)(1)(B)
### (Defendants Goldman Sachs, Barclay's Bank, and Varo Bank)

66.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

67.     On one or more occasions within the past two years, by example only and without limitation, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

68.     As Plaintiff detailed in the previous Count, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank have elected to use the e-Oscar system for their FCRA disputes received through the consumer reporting agencies.

69.     Defendants Goldman Sachs, Barclay's Bank, and Varo Bank were aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

70.     Defendants Goldman Sachs, Barclay's Bank, and Varo Bank do not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

71.     Defendants Goldman Sachs, Barclay's Bank, and Varo Bank understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

72.     Because of these violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: a denial for a credit card, lost opportunities including restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

73.     The above violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering Goldman Sachs, Barclay's Bank, and Varo Bank liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants Goldman Sachs, Barclay's Bank, and Varo Bank were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendants Goldman Sachs, Barclay's Bank, and Varo

Bank in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT FIVE:
### Violation of 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (Defendant Varo Bank)

75.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

76.     On one or more occasion within the past two years, by example and without limitation, Defendant Varo Bank violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including a notation that her accounts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

77.     Specially, Defendant Varo Bank failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when they responded to the credit reporting agencies, which would have indicated that the account was disputed.

78.     Upon information and belief, Plaintiff alleges that Varo Bank rarely, if ever, adds the XB or XC code or other notation that an account was disputed when they responded to ACDV forms.

79.     Furthermore, Varo Bank knew that Plaintiff disputed the subject account through her dispute letters to Experian.

80.     Plaintiff's disputes were bona fide as the accounts were either mixed into her credit report or fraudulently opened by a third party without her permission.

81.     As a result of Defendant Varo Bank's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: complications in obtaining healthcare, a denial for a credit card, lost opportunities including restrictions from real investments, a reduced credit score, stress, anxiety, and emotional distress.

82.     Defendant Varo Bank's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recovery against them under 15 U.S.C. § 1681o.

83.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Defendant Varo Bank in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**MARIA E. MARTIN**

20

By:___*/s/ Andrew J. Guzzo*_____
Counsel

Andrew J. Guzzo (HI-SBN 010586)
KELLY GUZZO, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 7400
Honolulu, HI 96813
Telephone: 808-664-4651
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*